731 P.2d 1357

Ramona ORTIZ, Mary Torivio and Elizabeth Garcia, Petitioners-Appellants,

v.

NEW MEXICO EMPLOYMENT SECURITY DEPARTMENT and Sky City Community School, Bureau of Indian Affairs, Department of the Interior, Respondents-Appellees.

No. 9071.

Court of Appeals of New Mexico.

Dec. 30, 1986.

Joel Jasperse, Northern New Mexico Legal Services, Inc., Gallup, for petitioners-appellants.

Paul G. Bardacke, Atty. Gen., Richard Baumgartner, Sp. Asst. Atty. Gen. for the New Mexico Employment Sec. Dept., Albuquerque, for respondents-appellees.

## OPINION

SANDRA A. GRISHAM, District Judge, by Order of Designation.

Ramona Ortiz, Mary Torivio, and Elizabeth Garcia (claimants) appeal from the district court's affirmance of the denial of unemployment compensation benefits by the New Mexico Employment Security Department (ESD). Claimants were employed by the Bureau of Indian Affairs as educational aides at the Sky City Community School for the 1983–1984 school year, and had been similarly employed since the early 1970's.

In prior years, claimants had been "furloughed" in the summer from approximately one week after school let out to one week before it reconvened, and had established a practice of collecting unemployment compensation for the ten weeks they were off in the summer.

In June of 1984, claimants were laid off earlier than usual and were told to report back October 1, 1984, the reason given for the longer furloughs being budget cuts.

The Federal Unemployment Tax Act, 26 U.S.C. Sections 3301 to 3311 (1976) provides that employees of educational institutions are ineligible for unemployment benefits for:

[A]ny week which commences during a period between two successive academic years or terms if such individual performs such services in the first of such academic years or terms and there is a reasonable assurance that such individual will perform such services in the second of such academic years or terms * * *.

26 U.S.C. 3304(a)(6)(A)(ii).

Congress mandated that this language is to be included in state law (26 U.S.C. Section 3304(a)(6)(A)), and it is found substantially unchanged at NMSA 1978, Section 51–1–5(C)(2) (Cum.Supp.1986). The state administers federal employees' claims for unemployment benefits. 5 U.S.C. § 8502(b) (1976).

Relying on Section 51–1–5(C)(2) and (4), ESD denied the claims in this case on the ground that the "between terms" section applied, and the district court affirmed that decision.

Claimants raise three issues: first, granting benefits would accomplish New Mexico public policy; second, there was no

"reasonable assurance of reemployment"; and third, the period of unemployment was not "between two successive academic years or terms." These are matters of first impression under New Mexico law.

■ In appeals from administrative decisions, the reviewing court must decide whether the decision is supported by substantial evidence in the record as a whole. *Duke City Lumber Co. v. New Mexico Environmental Improvement Board,* 101 N.M. 291, 681 P.2d 717 (1984). The appellate court must make the same review of the determination as the district court. *Groendyke Transport, Inc. v. New Mexico State Corporation Commission,* 101 N.M. 470, 684 P.2d 1135 (1984). Although the reviewing court generally may not substitute its judgment for that of the administrative decision-maker, it may correct a misapplication of the law. *Conwell v. City of Albuquerque,* 97 N.M. 136, 637 P.2d 567 (1981).

## I.  PUBLIC POLICY.

■ Claimants argue public policy requires a liberal construction, and indeed, the supreme court "is clearly committed to a liberal interpretation of our unemployment compensation act, so as to provide sustenance to those who are unemployed through no fault of their own and who are willing and ready to work if given the opportunity." *Wilson v. Employment Security Commission,* 74 N.M. 3, 14, 389 P.2d 855, 862–63 (1963). This policy, however, has been refined by the limitations of Section 51–1–5(C)(2), and as enunciated by another jurisdiction, "the intent of the limited disqualification * * * is to prevent subsidized summer vacations for those teachers who are employed during one academic year and who are reasonably assured of resuming their employment the following year." *Leissring v. Department of Industry, Labor & Human Relations,* 115 Wis.2d 475, 488–89, 340 N.W.2d 533, 539 (1983).

Denying claimants' benefits for between-term unemployment with reasonable assurance of reemployment is consistent with public policy.

## II.  REASONABLE  ASSURANCE  OF REEMPLOYMENT.

■ Claimants first argue that as a matter of law there was no reasonable assurance because they were told to report back to work on October 1, 1984, which was not when the next academic school year *began.* The statute reads that the reemployment must be *in* the second of such academic years or terms, not that it must commence at the beginning of the term. October 1, 1984 was *in* the second year, and claimants' argument here fails under the clear language of the statute.

■ Claimants next argue that they were not given a reasonable assurance that they were going to be reemployed on October 1, 1984. "Reasonable assurance" is defined in Section 51–1–5(C)(5) to mean:

[A] reasonable expectation of employment in a similar capacity in the second of such academic years or terms based upon a consideration of all relevant factors, including the historical pattern of reemployment in such capacity, a reasonable anticipation that such employment will be available and a reasonable notice or understanding that the individual will be eligible for and offered employment in a similar capacity.

Claimants allege that reasonable assurance was lacking because of the uncertainty of funding; however, another jurisdiction has found that " 'an assurance of public employment is reasonable even if it is subject to the availability of funds * * *.' " *Friedlander v. Employment Division,* 66 Or.App. 546, 553, 676 P.2d 314, 318 (1984) (quoting *Zeek v. Employment Division,* 65 Or.App. 515, 519, 672 P.2d 349, 351 (1983)).

Reviewing the record as a whole, it is clear that claimants fully anticipated reemployment on October 1, 1984, and in fact were so reemployed. Their expectation, based upon their historical pattern of reemployment and the fact that they were told to return to work on October 1, was reasonable. The complaints below were cen-

tered on the past availability of unemployment benefits and the hardships created by the unexpected decision to apply the law limiting those benefits; claimants did not express genuine concerns below that they were not going to be rehired October 1. This point also fails.

### III. CLAIMANTS' PERIOD OF UNEMPLOYMENT.

■ Claimants finally, and much more compellingly, argue that they were not unemployed "between two successive academic years or terms." Although the record is not totally clear, there is substantial evidence to support the district court's finding that the claimants were laid off work between June 1, 1984 and October 1, 1984. However, the record as a whole does *not* support that portion of the finding classifying this period as "the summer period." In our view, a portion of the period must be deemed a time of unemployment within the meaning of state law, because Congress did not intend to exclude such a period from benefits. *See Chicago Teachers Union v. Johnson,* 639 F.2d 353 (7th Cir.1980).

Again, there is no New Mexico case law on point, but other jurisdictions have given "academic year" its usual and normal meaning of fall through spring, even where the teachers and students did not report for school. *McKeesport Area School District v. Commonwealth, Unemployment Compensation Board of Review,* 40 Pa. Commw. 334, 397 A.2d 458 (1979); *Chicago Teachers Union v. Johnson.*

In the instant case, school itself closed and opened as usual, but the claimants, accustomed to furloughs of ten weeks between a week after students left to a week after they returned, were instead furloughed for seventeen weeks. It would take a tortured interpretation of "between terms" to include those extra seven weeks.

*Chicago Teachers Union* and *McKeesport* are specifically on point. They both involve situations where the school district claimed its "academic year" was simply shortened due to lack of funds in the for-

mer and to labor problems in the latter. The courts in both instances allowed the limitation of benefits for the usual summer break only, and granted unemployment benefits for the remaining weeks.

Here, we can do no less, especially in light of the fact that the 1984–1985 school year commenced as usual. Claimants are entitled to benefits for the weeks of unemployment that did not fall between the ordinary terms of employment. To conclude otherwise would result in any school district being able to avoid payment of unemployment compensation to any employee, so long as that employee was hired and paid even for one day of work in the succeeding school year.

### CONCLUSION.

The decision of the district court is affirmed as to denial of benefits for ten weeks, and is reversed as to denial of benefits for the extra weeks. The cause is remanded with instructions to the district court to determine the amount of weekly benefits due to claimants for the weeks in question and to enter judgment consistent herewith.

IT IS SO ORDERED.

BIVINS and MINZNER, JJ., concur.